IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEITH Q. WHITTINGTON,  *
    Plaintiff
                              *

v.                                                  CIVIL ACTION NO. PWG-13-1422
                              *

HONORABLE JUDGE WAXTER, et al.,  *
                                              Defendants

******

## MEMORANDUM

Plaintiff brings this self- represented action against Judge Thomas Waxter in the Circuit Court for Baltimore City; Department of Parole and Probation Agents Burke Angel Davis and Alisha A. Ash; and non-profit corporation Tuerk House Recovery Program employees Vanessa Lyles, Mrs. Robinson, Stacey Herbert, and Yvonne Gordon. *See* Compl., ECF No. 1. Plaintiff appears to be indigent and his Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) shall be GRANTED. However, Plaintiff's Complaint shall be dismissed under the provisions of 28 U.S.C. § 1915(e). *See Neitzke v. Williams*, 490 U.S. 319 (1989); *see also Denton v. Hernandez*, 504 U.S. 25 (1992); *Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996); *Nasim v. Warden*, 64 F.3d 951 (4th Cir. 1995).

Plaintiff states that he has suffered injuries, including "pain + suffering, [m]ental [a]nguish, etc. and . . . psychological trauma due to negligence." Compl., ECF No. 1. Plaintiff has included an attachment with his Complaint. *See* Attachment, Compl., ECF No 1-1. In his five page attachment, Plaintiff explains that on February 28, 2012, he was released from the Baltimore City Detention Center ("BCDC") and ordered by the Court to undergo "8-505 Drug court Program Inpatient Treatment" at the Tuerk House Treatment Facility. *See id.*

1

Plaintiff states that he is a mental health patient and that upon his release from BCDC to Tuerk House, he was issued a supply of psychiatric medications, including Lithium, Prozac and Visteryl. *Id.* Plaintiff states that prior to and on March 13, 2012, he advised his counselors, Yvonne Gordon and Stacey Herbert, that his medication had expired. *Id.* Plaintiff states that at this time, "they" had not provided him with a mental health care provider, a situation that continued for weeks. *Id.* He further alleges that as a result of not taking his medication, Plaintiff suffered acute memory loss and confusion, as well as episodes of insomnia and extreme paranoia—a situation that came to the attention of his probation officer, Angel Davis, when he failed to appear for an appointment with her. *Id.* Additionally, Plaintiff asserts that he was not permitted to speak in front of Judge Waxter during his first progress hearing, and that nothing about his lack of medication was brought to Judge Waxter's attention at that time. *Id.*

Plaintiff alleges that over the next few weeks, Vanessa Lyles, the insurance coordinator, promised to get "PAC insurance" so that Plaintiff could be seen by any health care provider who accepted that insurance plan. *Id.* However, Plaintiff asserts that this did not occur. *Id.* After several episodes where Plaintiff experienced extreme mania and stayed out all night, Plaintiff's program director informed Plaintiff's counselors and probation agents that "he could not deal with any patient (m/h) who was not on his medication." *Id.*

Plaintiff further states that Yvonne Gordon explained to him that his medication was delayed because Tuerk House did not want to pay for Plaintiff's medication out-of-pocket, and rather, was waiting for insurance or a program that offered discount medication. *Id.* Gordon advised Plaintiff to check himself in to inpatient care at Johns Hopkins Hospital so that he could get medication. *Id.* Plaintiff states he did so but was advised that the hospital no longer issued take home medication. *Id.*

Plaintiff then switched to a new counselor, Roger Schofield. *Id.* Plaintiff states that after a few days, his new counselor helped him enter a very good program with therapy and mental health care. *Id.* Plaintiff asserts that his psychiatrist faxed a diagnosis to his parole officer and Tuerk House. *Id.* He states that all promised he would go into a crisis unit but that this did not happen. *Id.*

On May 22, 2012, Plaintiff obtained and filled a prescription (presumably for his mental illness). *Id.* He alleges that he was advised that it would take "a couple of weeks to 30 days to be effective." *Id.* On May 24, 2012, Plaintiff appeared before Judge Waxter for a progress report. *Id.* At that time, Judge Waxter inquired about inconsistencies and episodes in Plaintiff's record and was advised by Schofield that Plaintiff had difficulty with his mental health care. *Id.* Judge Waxter indicated that he was aware of the problem and postponed the hearing for two weeks to see how Plaintiff was progressing. *Id.* Plaintiff states that "[t]he recommendation for me to be admitted inpatient was explained to the state's attorney but ignored," and no additional care was provided despite Plaintiff's doctor's note stating that he is not yet stable. *Id.*

On May 28, 2012, Plaintiff was accused of the murder of his girlfriend and the attempted murder of another victim. *Id.* Plaintiff states that although he is not admitting guilt, he believes that the "medical negligence" on behalf of the parties should be addressed. *Id.*

The defense of absolute immunity extends to "officials whose special functions or constitutional status requires complete protection from suit." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Judges, whether presiding at the state or federal level, are among those officials who are entitled to such immunity. *See Stump v. Sparkman*, 435 U.S. 349 (1978). Absolute immunity is necessary so that judges can perform their functions without harassment or intimidation—a benefit to the public at large, "whose interest it is that the judges be at liberty to

exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (quoting *Bradley v. Fisher*, 80 U.S. 335, 346 (1872)). Moreover, the law is well-settled that the doctrine of judicial immunity is applicable to actions filed under 42 U.S.C. § 1983. *See Stump*, 435 U.S. at 356.

In determining whether a particular judge is immune from suit, a court must inquire whether the challenged action was "judicial" and whether, at the time the challenged action was taken, the judge had subject matter jurisdiction. *See id.* Unless it can be shown that a judge acted in the "clear absence of all jurisdiction," absolute immunity exists even when the alleged conduct is erroneous, malicious, or in excess of judicial authority. *Id.* at 356–57.

Similarly, absolute immunity from suit for monetary damages has been extended to parole officials where, as here, they are performing tasks within their scope of authority and functionally comparable to those of judges. *See Walrath v. United States,* 35 F.3d 277, 281–82 (7th Cir. 1994); *Pope v. Chew*, 521 F.2d 400, 405 (4th Cir. 1975).

A review of Plaintiff's allegations does not compel the conclusion that Judge Waxter acted in clear absence of jurisdiction. Likewise, Plaintiff alleges no circumstances to cause this Court to regard the actions of the parole officials named here as outside the scope of their authority. Plaintiff's lawsuit is exactly the type of action that *Pierson* recognized as necessitating the doctrine of judicial immunity. In apparent disagreement with the decisions reached at the state court level, this self-represented litigant has turned to this forum to allege unconstitutional

4

actions on the part of state parole officials and a state court judge. Because immunity precludes Plaintiff's recovery against Defendants Waxter, Davis and Ash, *sua sponte* dismissal of Plaintiff's claims against them is appropriate.

Plaintiff's claims against Tuerk House Recovery Program employees are also subject to dismissal. In order to successfully assert a claim of constitutional rights violations, the named defendant must be a state actor. Specifically, the persons charged with the civil rights violation must be a state official, someone who has acted with a state official, someone who has obtained significant aid from a state official, or someone whose conduct is somehow attributable to the state. None of the Defendants named in the instant complaint are state officials, nor does the conduct described by Plaintiff have the imprimatur of official conduct.

In limited circumstances, however, seemingly private conduct can be the subject of a § 1983 suit. The Fourth Circuit recognizes four "exclusive circumstances" under which a private party may be a state actor subject to a § 1983 suit:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*DeBauche v. Trani*, 191 F. 3d 499, 507 (4th Cir. 1999). None of the acts or conduct alleged by Plaintiff in his Complaint fall within these four categories of conduct; thus, the private conduct is not an action of the state. *See Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993). The civil rights claims Plaintiff asserts against Defendants Lyles, Robinson, Herbert and Gordon must, therefore, be dismissed.

Finally, liability for a civil rights violation cannot be imposed for mere negligence, which

is the gravamen of Plaintiff's Complaint. *See Patten v. Nichols*, 274 F.3d 829, 843 (4th Cir. 2001).

A separate Order shall be entered reflecting the ruling set forth herein.

6/11/2013
Date

_____
Paul W. Grimm
United States District Judge